Exhibit

3 of 100 DOCUMENTS

U.S. Treaties on LEXIS

CANADA

Extradition

TIAS 8237

*27 U.S.T. 983; 1971 U.S.T. LEXIS 226*

December 3, 1971, Date-Signed; June 28, 1974, Date-Signed; July 9, 1974, Date-Signed

March 22, 1976, Date-In-Force

**STATUS:**
 [*1]   Treaty signed at Washington December 3, 1971;
And agreement amending the treaty
Effected by exchange of notes
Signed at Washington June 28 and July 9, 1974;
Ratification of the treaty, as amended, advised by the Senate of the United States of America December 1, 1975;
Ratified by the President of the United States of America December 12, 1975;
Ratified by Canada February 2, 1976;
Ratifications exchanged at Ottawa March 22, 1976;
Proclaimed by the President of the United States of America May 6, 1976;
Entered into force March 22, 1976.

TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA
AND CANADA
TRAITE D'EXTRADITION ENTRE LES ETATS-UNIS D'AMERIQUE ET LE CAN-
ADA

**TEXT:**
BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

**A PROCLAMATION**

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty,   [*2]   as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

Now, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended, to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the

United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seventy-six and of the Independence of the United States of America the two hundredth.

The United States of America and Canada, desiring to make more effective the cooperation of the two countries [*3] in the repression of crime by making provision for the reciprocal extradition of offenders, agree as follows:

ARTICLE 1

Each Contracting Party agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of, any of the offenses covered by Article 2 of this Treaty committed within the territory of the other, or outside thereof under the conditions specified in Article 3(3) of this Treaty.

ARTICLE 2

(1) Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2) Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3) Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this [*4] Article, is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

ARTICLE 3

(1) For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including air space and territorial waters and vessels and aircraft registered in that Contracting Party or aircraft leased without crew to a lessee who has his principal place of business, or, if the lessee has no such place of business, his permanent residence in, that Contracting Party if any such aircraft is in flight, or if any such vessel is on the high seas when the offense is committed. For the purposes of this Treaty an aircraft shall be considered in flight from the moment when power is applied for the purpose of the take-off until the moment when the landing run ends.

(2) In a case when offense 23 of the annexed Schedule is committed on board an aircraft at any time from the moment when all its external doors are closed following embarkation until the moment when any such door is opened for disembarkation, such offense and any other offense covered by Article [*5] 2 committed against passengers or crew of that aircraft in connection with such offense shall be considered to have been committed within the territory of a Contracting Party if the aircraft was registered in that Contracting Party, if the aircraft landed in the territory of that Contracting Party with the alleged offender still on board, or if the aircraft was leased without crew to a lessee who has his principal place of business, or, if the lessee has no such place of business, his permanent residence in that Contracting Party.

(3) When the offense for which extradition has been requested has been committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall have the power to grant the extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances.

ARTICLE 4

(1) Extradition shall not be granted in any of the following circumstances:

(i) When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

(ii)   [*6]   When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character. If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2) The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i) A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed on board an aircraft engaged in commercial services carrying passengers.   [*7]

ARTICLE 5

If a request for extradition is made under this Treaty for a person who at the time of such request, or at the time of the commission of the offense for which extradition is sought, is under the age of eighteen years and is considered by the requested State to be one of its residents, the requested State, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting State that the request for extradition be withdrawn, specifying the reasons therefor.

ARTICLE 6

When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

ARTICLE 7

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may [*8] be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

ARTICLE 8

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law.

ARTICLE 9

(1) The request for extradition shall be made through the diplomatic channel.

(2) The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3) When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person [*9]   to whom the warrant of arrest refers.

(4) When the request relates to a person already convicted, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

ARTICLE 10

(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada, or when, in the case of a request emanating [*10]   from the United States, they are authenticated by an officer of the Department of State of the United States and are certified by the principal diplomatic or consular officer of Canada in the United States.

ARTICLE 11

(1) In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

(2) On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3) A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents [*11]   specified in Article 9 shall not have been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

ARTICLE 12

(1) A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i) He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2) The foregoing shall not apply to offenses committed after the extradition.

ARTICLE 13

(1) A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of   [*12]   the requesting States it will extradite the person sought.

(2) Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

ARTICLE 14

(1) The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2) If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

ARTICLE 15

27 U.S.T. 983; 1971 U.S.T. LEXIS 226, *

(1) To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence [*13] shall, if found, be surrendered to the requesting State if extradition is granted.

(2) Subject to the qualifications of paragraph (1) of this Article, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.

ARTICLE 16

(1) The right to transport through the territory of one of the Contracting Parties a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

(2) The Party to which the person has been extradited shall reimburse the Party through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

ARTICLE 17

(1) Expenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State. The appropriate legal officers of the State in which the extradition proceedings take place shall, by all legal [*14] means within their power, assist the requesting State before the respective judges and magistrates.

(2) No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

ARTICLE 18

(1) This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2) This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3) This Treaty shall enter into force upon the exchange of ratifications. n1 It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.


n1 Mar. 22, 1976.

[*15]

IN WITNESS WHEREOF the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

DONE in duplicate, in the English and French languages, each language version being equally authentic, at Washington this third day of December, one thousand nine hundred seventy one.

Les Etats-Unis d'Amerique et le Canada, desireux de renforcer la cooperation existant entre les deux pays pour la repression du crime en instituant des dispositions en vue de l'extradition reciproque des delinquants, sont convenus de ce qui suit:

ARTICLE 1

Chaque Partie contractante s'engage a livrer a l'autre Partie, dans les circonstances et sous reserve des conditions indiquees au present Traite, les individus trouves sur son territoire qui ont ete accuses ou declares coupables d'une des infractions couvertes par l'Article 2 du present Traite commise sur le territoire de l'autre ou, aux conditions specifiees au paragraphe 3) de l'Article 3 du present Traite, hors de ce territoire.

ARTICLE 2

1) Les individus seront livres conformement aux dispositions du present Traite pour l'une quelconque des infractions enumerees a l'Annexe jointe audit Traite, et qui en est partie integrante,   [*16]   a condition que ces infractions soient punissables, en vertu des lois des deux Parties contractantes, d'une peine d'emprisonnement de plus d'un an.

2) Sera egalement extrade tout individu qui aura tente de commettre l'une des infractions enumerees a l'Annexe du present Traite, aura complote en vue de la commettre ou y aura ete partie.

3) L'extradition sera egalement accordee pour toute infraction a une loi federale des Etats-Unis dont une des infractions enumerees a l'Annexe ci-jointe ou justifiant l'extradition en vertu du paragraphe 2) du present Article constitue un element important, meme si le transport ou l'utilisation de la poste ou des moyens de communication entre Etats sont egalement des elements de cette infraction particuliere.

ARTICLE 3

1) Aux fins du present Traite, le territoire d'une Partie contractante comprend tout le territoire auquel s'etend la competence de celle-ci, y compris l'espace aerien et les eaux territoriales ainsi que les navires et aeronefs immatricules dans le territoire de cette Partie contractante ou les aeronefs loues sans equipage a une personne qui a le siege principal de son exploitation ou, a defaut, sa residence permanente sur le territoire [*17]   de ladite Partie contractante, si un tel aeronef est en vol ou si un tel navire se trouve en haute mer lorsque l'infraction est commise. Aux fins du present Traite, un aeronef est considere comme etant en vol depuis le moment ou la force motrice est employee pour decoller jusqu'au moment ou l'atterrissage a pris fin.

2) Si l'infraction 23 de l'Annexe ci-jointe est commise a bord d'un aeronef entre le moment ou, l'embarquement etant termine, toutes ses portes exterieures sont fermees et le moment ou l'une de ces portes est ouverte en vue du debarquement, cette infraction ainsi que toute autre infraction couverte par l'Article 2 qui est commise contre les passagers ou l'equipage de cet aeronef a l'occasion de cette infraction sont considerees comme ayant ete commises sur le territoire d'une Partie contractante si l'aeronef etait immatricule dans le territoire de celle-ci, s'il a atterri dans ledit territoire alors que l'auteur presume de l'infraction se trouvait a bord ou s'il a ete loue sans equipage a une personne qui a le siege principal de son exploitation ou, a defaut, sa residence permanente dans le territoire de ladite Partie contractante.

3) Lorsque l'infraction pour laquelle [*18]   l'extradition a ete demandee a ete commise hors du territoire de l'Etat requerant, l'executif ou toute autre autorite competente de l'Etat requis a le pouvoir d'accorder l'extradition si les lois de l'Etat requis donnent competence pour une telle infraction commise dans des circonstances similaires.

ARTICLE 4

1) L'extradition n'est accordee dans aucun des cas suivants:

i) Lorsque l'individu dont l'extradition est demandee ou bien fait l'objet de poursuites ou bien a ete juge et acquitte ou puni, sur le territoire de l'Etat requis, pour l'infraction motivant la demande d'extradition.

ii) Lorsque la poursuite relative a l'infraction est frappee de prescription selon les lois de l'Etat requerant.

iii) Lorsque l'infraction motivant la demande d'extradition revet un caractere politique ou que l'individu dont l'extradition est demandee prouve que la demande d'extradition vise a le mettre en jugement ou a le punir pour une infraction revetant un caractere politique. Si la question se pose de savoir si une affaire tombe sous le coup des dispositions du present alinea, il appartient aux autorites gouvernementales de l'Etat auquel la demande est presentee d'en decider.

2) Les dispositions de [*19]   l'alinea iii) du paragraphe 1) du present Article ne s'appliquent pas a ce qui suit:

i) L'enlevement ou le meurtre d'un individu auquel une Partie contractante est tenue, selon le droit international, d'accorder une protection speciale ou toutes autres voies de fait visant a lui enlever la vie ou a nuire a sa sante physique, ou toute tentative de perpetration d'une telle infraction a l'egard d'un tel individu.

ii) Lorsqu'un individu commet l'infraction 23 de l'Annexe ci-jointe a bord d'un aeronef en service commercial faisant le transport de passagers, ou, a bord d'un tel aeronef, tente de commettre ou complote en vue de commettre cette infraction ou y est partie.

ARTICLE 5

Si une demande d'extradition faite en vertu du present Traite vise un individu qui, au moment de cette demande ou au moment de la commission de l'infraction pour laquelle l'extradition est demandee, est age de moins de dix-huit ans et considere par l'Etat requis comme etant l'un de ses residents, l'Etat requis peut, s'il est etabli que l'extradition em-

pecherait le reclassement social et la rehabilitation de cet individu, recommander a l'Etat requerant de retirer sa demande d'extradition, en specifiant les raisons [*20]   sur lesquelles il se fonde.

ARTICLE 6

Lorsque l'infraction motivant la demande d'extradition est punissable de la peine de mort en vertu des lois de l'Etat requerant et que les lois de l'Etat requis n'autorisent pas cette peine pour une telle infraction, l'extradition peut etre re-fusee a moins que l'Etat requerant ne garantisse a l'Etat requis, d'une maniere jugee suffisante par ce dernier, que la peine de mort ne sera pas infligee ou, si elle l'est, ne sera pas appliquee.

ARTICLE 7

Lorsque l'individu dont l'extradition est demandee fait l'objet de poursuites ou subit une peine sur le territoire de l'Etat requis pour une infraction autre que celle pour laquelle l'extradition a ete demandee, sa remise peut etre differee jusqu'a l'issue des procedures et jusqu'a ce qu'il ait purge toute peine qui pourra ou a pu lui etre infligee.

ARTICLE 8·

La decision d'accorder ou de refuser l'extradition doit etre prise conformement a la loi de l'Etat requis et l'individu dont l'extradition est demandee aura droit a tous les recours prevus par ladite loi.

ARTICLE 9

1) La demande d'extradition doit se faire par la voie diplomatique.

2) La demande doit etre accompagnee du signalement de l'individu recherche,   [*21]   d'un enonce des faits, du texte des dispositions des lois de l'Etat requerant decrivant l'infraction et stipulant la peine a infliger a cet egard ainsi que d'un enonce de la loi relative a la prescription en matiere de procedures judiciaires.

3) Lorsque la demande vise un individu qui n'a pas encore ete declare coupable, elle doit en outre etre accompagnee d'un mandat d'arret emis par un juge ou une autre autorite judiciaire de l'Etat requerant et de tout element de preuve qui, selon les lois de l'Etat requis, justifierait l'arrestation et la mise en jugement dudit individu si l'infraction y avait ete commise, notamment la preuve que l'individu dont on demande l'extradition est bien celui qui est vise par le mandat d'arret.

4) Lorsque la demande vise un individu deja declare coupable, elle doit etre accompagnee du jugement de culpa-bilite et de la sentence prononces contre lui dans le territoire de l'Etat requerant, d'une declaration indiquant quelle partie de la peine reste a purger et de la preuve que l'individu dont l'extradition est demandee est bien celui qui doit purger la peine.

ARTICLE 10

1) L'extradition ne doit etre accordee que si la preuve est jugee suffisante, selon les [*22]   lois du lieu ou l'individu recherche est trouve, soit pour justifier une mise en jugement si l'infraction dont il est accuse avait ete commise sur le territoire dont ce lieu fait partie, soit pour etablir qu'il est bien l'individu condamne par les tribunaux de l'Etat requerant.

2) Les preuves documentaires a l'appui d'une demande d'extradition, qu'il s'agisse d'originaux ou de copies, doivent etre admises en preuve lors de l'examen de la demande d'extradition lorsque, dans le cas d'une demande emanant du Canada, elles sont legalisees par un fonctionnaire du Ministere de la Justice du Canada et certifiees par le principal agent diplomatique ou consulaire des Etats-Unis au Canada, ou que, dans le cas d'une demande emanant des Etats-Unis, elles sont legalisees par un fonctionnaire du Departement d'Etat des Etats-Unis et certifiees par le principal agent diplomatique ou consulaire du Canada aux Etats-Unis.

ARTICLE 11

1) En cas d'urgence, une Partie contractante peut demander l'arrestation provisoire de l'individu recherche en at-tendant la presentation de la demande d'extradition par la voie diplomatique. La demande d'arrestation doit donner le signalement de l'individu recherche, indiquer [*23]   qu'on se propose de demander l'extradition de cet individu, in-diquer si un mandat d'arret a ete emis contre lui ou s'il a ete declare coupable aux termes d'un jugement et fournir, le cas echeant, les autres renseignements qui seraient necessaires pour justifier l'emission d'un mandat d'arret si l'infraction avait ete commise dans le territoire de l'Etat requis ou si l'individu recherche y avait ete condamne.

2) Des reception d'une telle demande, l'Etat requis prend les mesures necessaires pour assurer l'arrestation de l'individu reclame.

3) Un individu arrete doit etre mis en liberte a l'expiration d'un delai de quarante-cinq jours de la date de son arrestation en vertu de cette demande si une demande d'extradition, accompagnee des documents specifies a l'Article 9, n'a pas alors ete recue a son egard. Cette stipulation n'empeche pas d'engager des procedures en vue de l'extradition de l'individu recherche si la demande d'extradition est recue par la suite.

ARTICLE 12

1) Un individu extrade en vertu du present Traite ne doit etre ni detenu, ni juge, ni puni sur le territoire de l'Etat requerant pour une infraction autre que celle ayant motive l'extradition et ne peut non plus etre   [*24]   livre par ledit Etat a un Etat tiers, sauf:

i) S'il a quitte le territoire de l'Etat requerant apres son extradition et y est revenu volontairement;

ii) S'il n'a pas quitte le territoire de l'Etat requerant dans un delai de trente jours apres etre devenu libre de le faire; ou

iii) Si l'Etat requis a consenti soit a ce qu'il soit detenu, juge et puni pour une infraction autre que celle ayant motive son extradition, soit a ce qu'il soit livre a un Etat tiers, a condition que cette autre infraction soit couverte par l'Article 2.

2) Les dispositions qui precedent ne s'appliquent pas aux infractions commises apres l'extradition.

ARTICLE 13

1) Lorsque l'extradition d'un individu est demandee par deux Etats ou plus, soit pour la meme infraction, soit pour des infractions differentes, l'Etat requis doit determiner vers lequel des Etats requerants il extradera l'individu recherche.

2) L'Etat requis peut notamment prendre en consideration les facteurs suivants: la possibilite d'une extradition ulterieure entre les Etats requerants, la gravite de chaque infraction, le lieu ou l'infraction a ete commise, les dates auxquelles les demandes ont ete recues et les dispositions des accords d'extradition [*25]   conclus entre l'Etat requis et le ou les autres Etats requerants.

ARTICLE 14

1) L'Etat requis doit rapidement communiquer a l'Etat requerant, par la voie diplomatique, la decision prise sur la demande d'extradition.

2) Si un mandat ou un ordre d'extradition d'un individu recherche a ete emis par l'autorite competente et que l'individu n'est pas renvoye du territoire de l'Etat requis dans le delai qui peut etre prescrit par les lois de cet Etat, il peut etre libere et l'Etat requis peut, par la suite, refuser de l'extrader pour la meme infraction.

ARTICLE 15

1) Dans la mesure ou le permettent les lois de l'Etat requis et sous reserve des droits des tiers, qui doivent etre dument respectes, tous les objets obtenus par suite de l'infraction ou qui peuvent etre requis a titre de preuve doivent, s'ils sont trouves, etre remis a l'Etat requerant si l'extradition est accordee.

2) Sous reserve des conditions du paragraphe 1) du present Article, les objets ci-dessus mentionnes doivent etre restitues a l'Etat requerant meme si l'extradition, ayant ete accordee, ne peut etre effectuee en raison de la mort ou de l'evasion de l'individu recherche.

ARTICLE 16

1) Le droit de transporter sur le territoire [*26]   d'une des Parties contractantes un individu qui est livre a l'autre Partie contractante par un Etat tiers sera accorde sur demande faite par la voie diplomatique, pourvu que soient reunies les conditions qui justifieraient l'extradition de cet individu par l'Etat de transit et que des raisons d'ordre public ne s'opposent pas a son passage.

2) La Partie vers laquelle l'individu a ete extrade doit rembourser a la Partie sur le territoire de laquelle il est transporte tous les frais encourus par cette derniere a l'occasion de ce transport.

ARTICLE 17

1) Les frais relatifs au transport de l'individu recherche vers l'Etat requerant doivent etre couverts par ce dernier. Les officiers de justice competents de l'Etat dans lequel se deroulent les procedures d'extradition doivent, par tous les moyens juridiques dont ils disposent, aider l'Etat requerant devant les juges et magistrats respectifs.

2) Aucune reclamation d'ordre pecuniaire, decoulant de l'arrestation, de la detention, de l'interrogatoire et de la remise d'individus recherches aux termes du present Traite, ne doit etre presentee par l'Etat requis contre l'Etat requerant.

ARTICLE 18

1) Le present Traite sera ratifie et les instruments [*27]   de ratification seront echanges a Ottawa le plus tot possible.

2) Le present Traite terminera et remplacera tous accords d'extradition en vigueur entre les Etats-Unis et le Canada et toutes dispositions relatives a l'extradition contenues dans tout autre accord en vigueur entre eux; toutefois, les infractions enumerees dans ces accords et commises avant l'entree en vigueur du present Traite seront passibles d'extradition en application des dispositions de ces accords.

3) Le present Traite entrera en vigueur le jour de l'echange des ratifications. Il pourra etre denonce a tout moment par l'une des Parties contractantes sur notification a l'autre Partie de son intention d'y mettre fin et, dans ce cas, le Traite cessera d'etre en vigueur six mois apres la date de reception de cette notification.

EN FOI DE QUOI les soussignes, dument autorises par leurs Gouvernements respectifs, ont signe le present Traite.

FAIT en double exemplaire, dans les langues anglaise et francaise, les deux textes faisant egalement foi, a Washington ce troisieme jour de decembre mil neuf cent soixante et onze.

[AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*

Canadian Embassy

Ambassade [*28]   du Canada

Washington, D.C.

June 28, 1974

No. 126
Excellency,

I have the honour to refer to the Treaty on Extradition between the Government of Canada and the Government of the United States signed at Washington on December 3, 1971 and to subsequent discussions between representatives of our two governments concerning the amendment of the said Treaty.

Further to those discussions I now have the honour to propose that the said Treaty be amended as follows:

(1) That Article 4(2)(i) of the Treaty shall be amended to read: "A kidnapping, murder, or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt or conspiracy to commit, or being a party to the commission of, such an offence with respect to any such person."
(2) That clause 26 of the Schedule annexed to the Treaty shall be amended to read: "Offences against the laws relating to the traffic in, production, manufacture or importation of drugs listed in Schedule I to the Single Convention on Narcotic Drugs of March 30, 1961 n1 and of drugs listed in Schedules I, II and III to the Convention on Psychotropic [*29]   Substances of February 21, 1971."

n1 TIAS 6298; *18 UST 1559.*

If this proposal meets with the approval of your government, I have the further honour to propose that this Note, which is authentic in English and in French, and your reply shall constitute an amendment to the Treaty on Extradition

between Canada and the United States referred to above, which shall come into force on the date of the entry into force of the said Treaty and which shall be considered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest consideration.

*French Text of the Canadian Note*

Canadian Embassy

Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126
Excellence,

J'ai l'honneur de me referer au Traite d'extradition entre le Gouvernement du Canada et le Gouvernement des Etats-Unis signe a Washington le 3 decembre 1971 et aux pourparlers subsequents entre les representants de nos deux gouvernements au sujet de l'amendement dudit Traite.

Comme suite a ces pourparlers, j'ai l'honneur de proposer que [*30]   ledit Traite soit amende comme il suit:

(1) Que l'Article 4(2)(i) du Traite soit amende pour qu'on y lise: "Un enlevement, meurtre ou autre voie de fait contre la vie ou l'integrite physique d'une personne a l'egard de laquelle l'une des Parties con-tractantes a le devoir, selon le droit international, d'accorder une protection speciale, ou toute tentative ou complot en vue de commettre ou de participer a un tel delit a l'egard d'une telle personne."
(2) Que la clause 26 de l'Annexe au Traite soit amendee pour qu'on y lise: "Des infractions aux lois se rapportant au trafic, a la production, a la fabrication ou a l'importation des drogues enumerees au Tableau I annexe a la Convention unique sur les stupefiants du 30 mars 1961 et des drogues enumerees aux Tab-leaux I, II et III annexes a la Convention sur les substances psychotropes du 21 fevrier 1971."

Si cette proposition recoit l'approbation de votre Gouvernement, j'ai en outre l'honneur de proposer que cette Note, qui est authentique dans sa version anglaise et francaise, et votre reponse constituent un amendement au Traite d'extra-dition entre le Canada et les Etats-Unis, dont il est question ci-dessus, lequel prendra effet le [*31]   jour de l'entree en vigueur dudit Traite et sera considere comme partie integrante dudit Traite.

Je vous prie d'agreer, Excellence, l'assurance de ma tres haute consideration.

*The Secretary of State to the Canadian Ambassador*

DEPARTMENT OF STATE

WASHINGTON

July 9, 1974

Excellency:

I have the honor to refer to your note of June 28, 1974, in the English and French languages, relating to amendment of the Treaty on Extradition between the United States of America and Canada, signed at Washington December 3, 1971.

On behalf of the United States of America I confirm the understanding set forth therein and consider that your note and this reply constitute an agreement between the United States and Canada on this matter.

Accept, Excellency, the renewed assurances of my highest consideration.

**SIGNATORIES:**
[SEAL]

GERALD R. FORD
By the President:

27 U.S.T. 983; 1971 U.S.T. LEXIS 226, *

JOSEPH JOHN SISCO

*Acting Secretary of State*

FOR THE UNITED STATES OF AMERICA:

William P. Rogers

FOR CANADA:

Mitchell Sharp

POUR LES ETATS-UNIS D'AMERIQUE:

POUR LE CANADA:

M. Cadieux,

Ambassador.

The Honourable

    Henry A. Kissinger,

    Secretary of State,

    Washington, D.C. 20520

    L'Ambassadeur,

    M. Cadieux.

L'Honorable

    Henry A. Kissinger,

    Secretaire d'Etat,   [*32]

    Washington, D.C. 20520

    For the Secretary of State:

    Acting Secretary
His Excellency

    Marcel Cadieux,

    Ambassador of Canada.

**APPENDICES:**
SCHEDULE

1. Murder; assault with intent to commit murder.
2. Manslaughter.
3. Wounding; maiming; or assault occasioning bodily harm.
4. Unlawful throwing or application of any corrosive substances at or upon the person of another.
5. Rape; indecent assault.
6. Unlawful sexual acts with or upon children under the age specified by the laws of both the requesting and requested States.
7. Willful nonsupport or willful abandonment of a minor when such minor is or is likely to be injured or his life is or is likely to be endangered.
8. Kidnapping; child stealing; abduction; false imprisonment.
9. Robbery; assault with intent to steal.
10. Burglary; housebreaking.
11. Larceny, theft or embezzlement.

27 U.S.T. 983; 1971 U.S.T. LEXIS 226, *

12. Obtaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other fraudulent means, whether such deceit or falsehood or any fraudulent means would or would not amount to a false pretense.

13. Bribery, including soliciting, offering and accepting.

14. Extortion.

15. Receiving [*33]   any money, valuable securities or other property knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of any company.

17. Offenses against the laws relating to counterfeiting or forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any person travelling upon a railway, or in any aircraft or vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt on board a vessel against the authority of the captain or commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft, by force or violence or threat of force or violence, or by any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in, production, manufacture, or importation of narcotic drugs, Cannabis sativa L., hallucinogenic drugs, amphetamines, barbiturates, cocaine and its derivatives.

27. Use of the mails or other means of communication [*34]   in connection with schemes devised or intended to deceive or defraud the public or for the purpose of obtaining money or property by false pretenses.

28. Offenses against federal laws relating to the sale or purchase of securities.

29. Making or having in possession any explosive substance with intent to endanger life, or to cause severe damage to property.

30. Obstructing the course of justice in a judicial proceeding, existing or proposed, by:

> a) dissuading or attempting to dissuade a person by threats, bribes, or other corrupt means from giving evidence;
> b) influencing or attempting to influence by threat, bribes, or other corrupt means a person in his conduct as a juror; or
> c) accepting a bribe or other corrupt consideration to abstain from giving evidence or to do or to refrain from doing anything as a juror.

ANNEXE

1. Le meurtre; les voies de fait avec intention de commettre un meurtre.

2. L'homicide involontaire (manslaughter).

3. Les blessures; la mutilation; ou les voies de fait occasionnant des lesions corporelles.

4. Le fait de lancer ou appliquer, illicitement, des substances corrosives sur une autre personne.

5. Le viol; l'attentat a la pudeur.

6. Les actes sexuels [*35]   illicites commis avec des enfants, ou sur la personne de tels enfants n'ayant pas atteint l'age specifie par les lois de l'Etat requerant et celles de l'Etat requis.

7. Le refus de pourvoir a la subsistance, ou l'abandon volontaire d'un mineur lorsque ce mineur est ou sera probablement blesse ou que sa vie est ou sera probablement en danger.

8. L'enlevement (kidnapping); le vol d'enfant; le rapt (abduction); l'emprisonnement illegal.

9. Le vol qualifie; les voies de fait dans l'intention de voler.

10. Le cambriolage; l'effraction.

11. Le larcin, le vol ou le detournement.

12. L'obtention de biens et de sommes d'argent ou de valeurs par des faux-semblants ou par menace de violence ou en fraudant le public ou une personne quelle qu'elle soit par supercherie, mensonge ou d'autres moyens dolosifs, que cette supercherie, ce mensonge ou ces autres moyens dolosifs constituent ou non un faux-semblant.

13. La corruption, notamment la sollicitation, l'offre et l'acceptation y relatives.

14. L'extorsion.

27 U.S.T. 983; 1971 U.S.T. LEXIS 226, *

15. La reception d'argent, de valeurs ou d'autres biens que l'on sait avoir ete obtenus illegalement.

16. La fraude commise par un banquier ou un agent ou par un administrateur ou membre de   [*36]   la direction d'une compagnie.

17. Les infractions aux lois ayant trait a la contrefacon ou au faux.

18. Le parjure au cours de procedures quelles qu'elles soient.

19. Le fait de souscrire un faux affidavit ou de faire une declaration solennelle fausse a une fin extrajudiciaire.

20. Le crime d'incendie.

21. Tout acte commis dans l'intention de porter atteinte a la securite d'une personne voyageant en chemin de fer, a bord d'un aeronef ou d'un navire ou par un autre moyen de transport.

22. La piraterie, aux termes d'une loi ou du droit des gens; la mutinerie ou la revolte, a bord d'un navire, contre l'autorite du capitaine ou du commandant de ce navire.

23. Toute prise de possession illicite ou tout exercice illicite du controle d'un aeronef, par la force ou la violence, la menace de force ou de violence ou toute autre forme d'intimidation, a bord de cet aeronef.

24. Les dommages causes volontairement a des biens.

25. Les infractions aux lois de la faillite.

26. Les infractions aux lois ayant trait au trafic, a la production, la fabrication ou l'importation de stupefiants, Cannabis sativa L., drogues hallucinogenes, amphetamines, barbituriques, cocaine et ses derives.

27. L'usage de   [*37]   la poste ou d'autres moyens de communication relativement a des projets concus ou formes pour leurrer ou frauder le public ou dans le dessein d'obtenir de l'argent ou des biens par des faux-semblants.

28. Les infractions aux lois federales ayant trait a la vente et a l'achat de valeurs mobilieres.

29. La fabrication ou la possession d'une substance explosive quelconque dans le but de mettre en danger la vie des personnes ou de causer de graves dommages aux biens.

30. Le fait d'entraver le cours de la justice dans une procedure judiciaire, existante ou projetee:

      a) dissuadant ou tentant de dissuader une personne, par des menaces, des pots-de-vin ou autres moyens de corruption, de rendre temoignage;

      b) influencant ou tentant d'influencer, par des menaces, des pots-de-vin ou autres moyens de corruption, une personne dans sa conduite comme jure;

      c) acceptant un pot-de-vin ou une autre compensation venale pour s'abstenir de rendre temoignage ou pour faire ou s'abstenir de faire quelque chose a titre de jure.

2 of 100 DOCUMENTS

CANADA

PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

TREATY DOC. 101-17

*1988 U.S.T. LEXIS 182*

January 11, 1988; December 3, 1971, Date-Signed

**STATUS:**

 [*1]   PENDING: APRIL 24, 1990. Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

MESSAGE FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988,
AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES
OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3,
1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9,
1974

**TEXT:**
101ST CONGRESS

 *2d Session*

 SENATE

 **LETTER OF TRANSMITTAL**

 THE WHITE HOUSE, *April 24, 1990.*

*To the Senate of the United States:*

 With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Protocol signed at Ottawa on January 11, 1988, amending the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. I transmit also, for the information of the Senate, the report of the Department of State with respect to the protocol.

 The protocol amends the Extradition Treaty Between the United States and Canada, signed at Washington [*2]   on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. It represents an important step in improving law enforcement cooperation and combatting terrorism by excluding from the scope of the political offense exception serious offenses typically committed by terrorists; e.g., murder, manslaughter, kidnapping, use of an explosive device capable of endangering life or causing grievous bodily harm, and attempt or conspiracy to commit the foregoing offenses.

 The protocol also will help to improve implementation of the current extradition treaty in several other respects. Most significant, the protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, *inter alia*, parental child abduction and certain additional narcotics offenses will be covered by the new treaty.

 I recommend that the Senate give early and favorable consideration to the protocol and give its advice and consent to ratification.

 GEORGE BUSH.

1988 U.S.T. LEXIS 182, *

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE, *Washington, April 10, 1990.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Protocol amending the 1971 Extradition Treaty [*3] Between the United States of America and Canada signed at Ottawa January 11, 1988. I recommend that the Protocol be transmitted to the Senate for advice and consent to ratification.

The Protocol supplements and amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974 *(27 U.S.T. 983; TIAS 8237).* The Protocol would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents an important step toward improving law enforcement cooperation and countering the threat of international terrorism and other crimes of violence. In addition, the Protocol will help improve the implementation of the current Treaty in several other respects. Most significantly, the Protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, inter alia, parental child abduction and certain additional narcotics offenses will be covered.

Article 2 of the 1971 Extradition Treaty, as amended, which incorporates a Schedule of extraditable [*4]  offenses, has been replaced in its entirety. Pursuant to the current Extradition Treaty, only crimes that are listed in the Schedule are considered extraditable offenses. As amended by Article I of the Protocol, Article 2 of the 1971 Treaty, as amended, adopts a dual criminality approach, which emphasizes extradition based on underlying criminal conduct rather than for a particular offense. A dual criminality clause permits extradition for any crime that is punishable in both countries by imprisonment or other detention for at least one year. Inclusion of a dual criminality clause, therefore, obviates the need to renegotiate or supplement the Treaty as offenses, such as computer-related crimes or money laundering, become punishable under the laws of both states.

Article I of the Protocol replaces Article 2 of the 1971 Treaty and provides that an offense is extraditable notwithstanding that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States. This provision will allow the United States to request extradition [*5]  for offenses including interstate and foreign travel or transportation in aid of racketeering enterprises even though the Canadian laws do not include analogous jurisdictional elements for similar underlying criminal behavior. The new provision also stipulates that offenses that relate to taxation or revenue or that are of a "purely fiscal character" will be extraditable offenses.

Article II of the Protocol is a technical amendment, deleting the Schedule of extraditable offenses annexed to the 1971 Treaty, as amended, and incorporated by reference in Article 2.

Article III of the Protocol deletes Article 3 of the 1971 Treaty, in which a particularized definition of "territory," which was necessary at that time to cover certain types of hijacking offenses, is no longer necessary, as both the United States and Canada are parties to the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971, (Hijacking Convention) *(22 U.S.T. 1641;* TIAS 7192) and the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September [*6]   23, 1971, and entered into force January 26, 1973, (Sabotage Convention) *(24 U.S.T. 564;* TIAS 7570).

Article 3(3) of the 1971 Treaty is amended to give the Executive or other appropriate Authority the discretion to extradite fugitives when the requesting state has jurisdiction over an offense in a situation where the laws of the requested state would not provide for jurisdiction in similar circumstances.

Article IV of the Protocol replaces Article 4 of the 1971 Treaty, and effectively limits the scope of the political offense exception. It specifies certain crimes which shall not be regarded as political offenses, including murder, manslaughter, malicious assault, kidnapping, specified explosives offenses, and conspiracy or attempt to commit any of the foregoing offenses.

In addition, Article IV of the Protocol includes a provision that excludes from the reach of the political offense exception any offense for which both the United States and Canada have an international treaty obligation to extradite the person or submit his case for prosecution; e.g., aircraft hijacking pursuant to the Hijacking Convention; aircraft sabotage

pursuant to the Sabotage Convention;   [*7]   crimes against internationally protected persons, including diplomats, under the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973 (28 U.S.T. 1975; TIAS 8532); and hostage taking pursuant to the International Convention against the Taking of Hostages, done at New York on December 17, 1979. This exception will also extend to crimes similarly defined in future multilateral treaties.

Article V of the Protocol replaces Article 7 of the 1971 Extradition Treaty, which allows the Requested State to defer surrender of a fugitive being proceeded against or serving a sentence in its territory until the conclusion of the proceedings and the full execution of any punishment. Under the Protocol, the Requested State has the discretion to choose to extradite to the Requesting State a fugitive who is serving a prison sentence in the Requested State before the expiration of his sentence. This alternative of temporary surrender is routinely included in our modern extradition treaties.

Article VI of the Protocol replaces Article 11(3) of the current Treaty to extend [*8]   the period of provisional arrest in the Requested State from forty-five days to sixty days, which is the time period most commonly provided under U.S. extradition treaties. The extension will allow prosecutors greater latitude in assembling extradition packages and in making necessary adjustments or additions to the documents.

Article VII of the Protocol amends the 1971 Treaty by adding a provision that establishes that, in cases where both states have jurisdiction to prosecute for an offense, the Executive Authority of the Requested State will consult with the Executive Authority of the Requesting State and make a decision whether to extradite the fugitive, or whether to submit the case to its competent authorities for the purpose of prosecution, after considering all relevant factors.

Article VIII of the Protocol provides that its provisions shall apply to any offense committed, any request made or any person found extraditable before or after the entry into force of the Protocol, but shall not apply to an offense committed before the Protocol enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.   [*9]

Article IX of the Protocol sets forth the procedures for ratification and entry into force.

I enclose, for the information of the Senate, an exchange of letters, dated January 11, 1988, which restates that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters," is an extraditable offense under the 1971 Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Protocol to the Senate at the earliest possible date.

Respectfully submitted,

JAMES W. BAKER III.

Enclosure: As stated.

THE SECRETARY OF STATE,

Washington, January 11, 1988.

Hon. JOE CLARK, P.C., M.P.,
Secretary of State for External [ILLEGIBLE WORD] of Canada, Ottawa.

DEAR MR. MINISTER: I refer to the Protocol Amending the Treaty on Extradition between the United States and Canada we signed today and have the honor to address to you the following.

The United States and Canada recognize that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters", is an extraditable [*10] offense under the United States-Canada Extradition Treaty.

Where a person has been charged with or convicted of such an offense in Canada and is found within the jurisdiction of the United States, the United States agrees, upon request, to commence extradition proceedings against such a person pursuant to the Treaty in order that the person may be returned to Canada.

The United States will use its best efforts to honor Canadian requests for testimony, information, or other assistance pertaining to such abductions.

Canada and the United States agree to cooperate to deter such transborder abductions. To assist in achieving that purpose, the United States will continue to exert its best efforts to inform those engaged in business as bail bondsmen or bounty hunters and other interested parties of the positions set forth in this exchange of letters.

Canada and the United States agree to consult promptly concerning any case of transborder abduction involving bounty hunters which might arise in the future. The purpose of such consultations shall be to address matters relating to any such case, including any request by the Government of Canada for the return of the person so abducted. In  [*11] the event of return, the Governments agree to cooperate to have the abducted person escorted to Canada and taken into custody at the border, pursuant to a request for provisional arrest, pending the outcome of extradition proceedings. For the purpose of these consultations, the principal law enforcement contact for the United States will be the Director of the Office of International Affairs of the Criminal Division of the Department of Justice.

I have the honor to propose that this letter and your reply constitute an understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Sincerely yours,

GEORGE P. SHULTZ.

OTTAWA, *January 11, 1988.*

JLA-0026.
Hon. GEORGE P. SHULTZ,
*Secretary of State of the United States of America.*

DEAR MR. SECRETARY: I have the honour to acknowledge receipt of your letter of today's date concerning transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters". I accept your proposal that your letter and this reply [*12]   constitute an Understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Yours sincerely,

JOE CLARK.

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

"ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding [*13]

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive authority in the requested State may, in its discretion, grant extradition."

ARTICLE IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the [*14]   following offenses shall be deemed not to be offenses within sub-paragraph (iii) of paragraph 1 of this Article:

   "(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

   "(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

   "(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

   "(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

   "(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

ARTICLE V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

"ARTICLE 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that   [*15]   for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

ARTICLE VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

ARTICLE VII

The Extradition Treaty is amended by adding the following after Article 17:

"ARTICLE 17 BIS

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall

1988 U.S.T. LEXIS 182, *

decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making   [*16]   its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

ARTICLE VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

ARTICLE IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the [*17]   English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

GEORGE P. SHULTZ.

For the Government of Canada.

JOE CLARK.

1 of 100 DOCUMENTS

U.S. Treaties on LEXIS

CANADA

SECOND PROTOCOL AMENDING EXTRADITION TREATY WITH CANADA

TREATY DOC. 107-11

*2001 U.S.T. LEXIS 92*

January 12, 2001, Date-Signed

**STATUS:**
 [*1]   PENDING: JULY 11, 2002. The Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

MESSAGE FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING SECOND PROTOCOL AMENDING THE TREATY ON EXTRA-
DITION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND THE GOVERNMENT OF CANADA, SIGNED AT OTTAWA ON JANUARY 12,
2001

**TEXT:**
107TH CONGRESS

 *2d Session*

SENATE

**LETTER OF TRANSMITTAL**

THE WHITE HOUSE, *July 11, 2002.*

*To the Senate of the United States:*

 With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Second Proto-col Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada, as amended, signed at Ottawa on January 12, 2001. In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Second Protocol. As the report explains, the Second Protocol will not require implementing legislation.

 The Second Protocol amends the Extradition Treaty Between the United States of America and Canada, signed at Washington [*2]   on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988.

 The Second Protocol, upon entry into force, will enhance cooperation between the law enforcement communities of both nations. The Second Protocol incorporates into the U.S.-Canada Extradition Treaty a provision on temporary sur-render of persons that is a standard provision in more recent U.S. bilateral extradition treaties. It also provides for new authentication requirements of documentary evidence, which should streamline the processing of extradition requests.

 I recommend that the Senate give early and favorable consideration to the Second Protocol and give its advice and consent to ratification.

 GEORGE W. BUSH.

**LETTER OF SUBMITTAL**

DEPARTMENT OF STATE, *Washington, May 31, 2002.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Second Protocol Amending the Treaty on Extradition Between the Government of the United states of America and the Government of Canada, signed at Ottawa on January 12, 2001 ("Second Protocol"). I recommend that the Second Protocol be transmitted to the Senate for its advice [*3] and consent to ratification.

The Second Protocol will strengthen the U.S.-Canada extradition relationship by incorporating a temporary surrender mechanism into the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988 ("Extradition Treaty"). The Second Protocol will also streamline the extradition process by modifying the Extradition Treaty's authentication requirements relating to the admissibility of documentary evidence.

A temporary surrender mechanism has become a standard provision in more recent U.S. bilateral extradition treaties. It allows person who have been found extraditable to be temporarily surrendered to one State to stand trial while they are still serving sentences in the other State. Temporary surrender can be an important tool for use in cases where serious crimes have been committed in one country which might go unpunished if trial in that country were to be delayed for a long period while a sentence was being served for crimes committed in the other country. It enables sequential trials of [*4]  individuals who have committed extraditable offenses in both countries at a time when witnesses and evidence to both crimes are more readily available.

Article 1 of the Second Protocol amends the Extradition Treaty to provide for a new Article 7bis, which will follow Article 7's existing provisions authorizing the State in receipt of an extradition request ("requested State") to delay surrender until after proceedings against a person in that State have been completed or the person's sentence in that State has been served.

New article 7bis(1) provides that if the requested State has granted an extradition request in accordance with the Treaty with respect to a person who already has been convicted and sentenced in the requested State, it may temporarily surrender the person to the requesting State for prosecution. It further provides that the courts of the requested State must not be divested by virtue of the temporary surrender of jurisdiction over any appeal or habeas corpus application relating to the conviction or sentence in the requested State.

Article 7bis(2) provides that the person surrendered pursuant to paragraph (1) must be kept in custody in the requesting State. It also [*5]  provides that the person must be returned to the requested State within forty-five days after the conclusion of the proceedings for which the person's presence was required or at another time as specified by the requested State, in accordance with conditions determined by the Parties. This provision anticipates that authorities in the United States and Canada, which in some cases will include state-level authorities, will consult to determine appropriate conditions for the temporary surrender of an individual, including arrangements for the transfer and return of the prisoner, as well as any extraordinary matters that may be relevant, such as medical care requirements. Consistent with our normal extradition practice, any case-specific agreements or assurances relating to the temporary surrender would be concluded by the federal authorities on behalf of state authorities. Similar to the language in paragraph (1), Article 7bis(2) also provides that the transfer of the person back to the requested State will not divest the courts of the requesting State of jurisdiction over any appeal or habeas corpus application relating to the matter for which the prisoner was temporarily surrendered.   [*6]

Article 7bis(3) provides that the time spent in custody in the requesting State may be credited to the sentence in the requested State. In the case of the United States, credit for time served by a person surrendered to Canadian authorities may differ among U.S. state and federal authorities.

Article 7bis(4) provides that the requested State can waive the return of the surrendered person in the event the person's sentence in the requested State expires during the temporary surrender period. Article 7bis(4) provides that in such cases the person's surrender shall be considered a "final surrender" under the Extradition Treaty.

Because temporary surrender is contingent on a grant of extradition, Article 7bis(5) provides that the requesting State does not have to make a further request for the extradition of a person who has been returned to the requested

State after having been convicted and sentenced in the requesting State for the offense for which temporary surrender was granted.

Article 7bis(6) provides that a person who has been returned to the requested State, after having been convicted and sentenced during a temporary surrender, must be finally surrendered once the custodial   [*7]   portion of the person's sentence in the requesting State has been completed or, if the requested State so specifies, at an earlier time. This provision contemplates that the requested State will finally surrender a person who has been released on parole or under other conditions. It also envisions that the requested State may choose to surrender the person at an earlier time.

Article 7bis(7) recognizes that there may be reasons not to proceed with final surrender even though the person was convicted and sentenced during a temporary surrender. Article 7bis(7) (a) provides that final surrender will not take place when the requesting State advises that it is no longer required because the sentence imposed in the requesting State has expired or for other reasons. Similarly, Article 7bis(7) (b) provides that the person will not be surrendered to the requesting State in the event the competent authority of the requested State revokes its original grant of extradition.

Article 2 of the Second Protocol will establish a new framework for the admissibility of documentary evidence in support of a request for extradition by replacing existing Article 10(2) of the Extradition Treaty.

Consistent   [*8]   with U.S. extradition law on the admissibility of documentation, new Article 10(2)(a) reiterates the existing requirement that, in the case of a request from Canada, documents be authenticated by an officer of the Department of Justice of Canada and certified by the principal diplomatic or consular office of the United States in Canada. Article 10(2)(b), however, changes existing requirements with respect to requests emanating from the United States, so as to take advantage of changes in Canadian law regarding the admissibility of extradition documents in Canadian courts. Specifically, Article 10(2)(b) eliminates the requirement that the United States have its documentary evidence in support of extradition requests to Canada authenticated by an officer of the U.S. Department of State and certified by the principal diplomatic or consular officer of Canada in the United States. Instead, Article 10(2) (b) streamlines the authentication process by allowing documents to be certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. When the person whose extradition [*9]   is sought has already been convicted, documents supporting the U.S. request are to be certified by a judicial, prosecuting or correctional authority who can attest to the fact that the documents are accurate. These changes should simplify and thereby reduce the administrative burden of processing extradition requests by the United States.

New Article 10(2) (c) provides an alternative to subparagraphs (a) and (b), by providing that documents may also be certified or authenticated in any other manner accepted by the law of the requested State. This addition will enable both countries to take advantage of any changes to their applicable laws.

Article 3 of the Second Protocol addresses the relationship between the Second Protocol and the Extradition Treaty. Paragraph (1) provides that the Second Protocol will form an integral part of the Extradition Treaty. Paragraph (2) provides for retroactivity, noting that, notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, the Second Protocol will apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date. Finally, paragraph   [*10]   (3) provides that the Second Protocol is subject to ratification, and enters into force upon the exchange of instruments of ratification. The Second Protocol would terminate upon termination of the Extradition Treaty.

The Second Protocol does not require implementing legislation. A Technical Analysis explaining in detail the provisions of the Second Protocol is being prepared by the United States negotiating delegation, consisting of the Departments of State and Justice, and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA

Signed at Washington on December 3, 1971, as amended by an Exchange of Notes at Washington on June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988

2001 U.S.T. LEXIS 92, *

THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA (hereinafter "the Parties");

RECOGNIZING the close bilateral relationship which exists [*11]  between them, reflected in numerous instruments and mechanisms of legal cooperation;

COMMITTED to strengthening legal cooperation in the fight against crime; and

DESIRING to make more effective the Extradition Treaty between the Parties, signed at Washington on December 3, 1971 (hereinafter "the Extradition Treaty"), as amended by an exchange of notes of June 28 and July 9, 1974, and the Protocol to the Extradition Treaty between the Parties, signed at Ottawa on January 11, 1988 (hereinafter "the Protocol");

HAVE AGREED as follows:

ARTICLE 1

The Extradition Treaty is amended by adding the following after Article 7:

"Article 7 bis

1. The requested State, after granting an extradition request made in accordance with the Extradition Treaty, may temporarily surrender a person who has been convicted and sentenced in the requested State, in order that the person sought may be prosecuted in the requesting State. The temporary surrender of the person shall not divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus application relating to the conviction or sentence that otherwise may be available under the laws of the requested State.

2. A person temporarily [*12]  surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State. The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose. The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3. The period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4. When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender. A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5. Subject to paragraph [*13]  7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requesting State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition.

6. Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the requested State, or at an earlier time specified by the requested State.

7. Final surrender shall not take place when:

(a) the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

(b) after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State."

ARTICLE 2

2001 U.S.T. LEXIS 92, *

Article 10(2) of the Extradition Treaty is deleted and replaced by the following text:

"(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:

(a) in the [*14]   case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada;

(b) in the case of a request emanating from the United States for a person who is sought for prosecution, they are certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. In the case of a request emanating from the United States for a person who is sought in connection with a conviction, the documents must be certified by a judicial, prosecuting or correctional authority who attests to the fact that the documents are accurate; or

(c) they are certified or authenticated in any other manner accepted by the law of the requested State."

ARTICLE 3

1. This Second Protocol shall form an integral part of the Extradition Treaty.

2. Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Second Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether [*15]   the offence was committed before or after that date.

3. This Second Protocol shall be subject to ratification, and shall enter into force upon the exchange of instruments of ratification. It shall terminate upon termination of the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Second Protocol.

DONE in duplicate at Ottawa this twelfth day of January 2001 in the English and French languages, the two texts being equally authentic.


FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA

FOR THE GOVERNMENT OF CANADA

**DISCLAIMER: THE FOLLOWING IS AN UNOFFICIAL CONSOLIDATED VERSION OF THE CANADIAN EXTRADITION TREATY AND TWO PROTOCOLS AS OF NOVEMBER 2008. ALL CITATIONS SHOULD BE MADE TO THE OFFICIAL DOCUMENTS.**

CANADA. EXTRADITION. 27 UST 983. TIAS 8237. TREATY SIGNED AT WASHINGTON DECEMBER 3, 1971 (SD). AND AGREEMENT AMENDING THE TREATY EFFECTED BY EXCHANGE OF NOTES. SIGNED AT WASHINGTON JUNE 28 AND JULY 9, 1974 (SD). RATIFICATION OF THE TREATY, AS AMENDED, ADVISED BY THE SENATE OF THE UNITED STATES OF AMERICA DECEMBER 1, 1975; RATIFIED BY THE PRESIDENT OF THE UNITED STATES OF AMERICA DECEMBER 12, 1975; RATIFIED BY CANADA FEBRUARY 2, 1976; RATIFICATIONS EXCHANGED AT OTTAWA MARCH 22, 1976; PROCLAIMED BY THE PRESIDENT OF THE UNITED STATES OF AMERICA MAY 6, 1976. ENTERED INTO FORCE MARCH 22, 1976 (EIF).

TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA
AND CANADA

THE UNITED STATES OF AMERICA AND CANADA, DESIRING TO MAKE MORE EFFECTIVE THE COOPERATION OF THE TWO COUNTRIES IN THE REPRESSION OF CRIME BY MAKING PROVISION FOR THE RECIPROCAL EXTRADITION OF OFFENDERS, AGREE AS FOLLOWS:

ARTICLE 1

EACH CONTRACTING PARTY AGREES TO EXTRADITE TO THE OTHER, IN THE CIRCUMSTANCES AND SUBJECT TO THE CONDITIONS DESCRIBED IN THIS TREATY, PERSONS FOUND IN ITS TERRITORY WHO HAVE BEEN CHARGED WITH, OR CONVICTED OF, ANY OF THE OFFENSES COVERED BY ARTICLE 2 OF THIS TREATY COMMITTED WITHIN THE TERRITORY OF THE OTHER, OR OUTSIDE THEREOF UNDER THE CONDITIONS SPECIFIED IN ARTICLE 3(3) OF THIS TREATY.

ARTICLE 2

*(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.*
*(2) An offense is extraditable notwithstanding*
*(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or*
*(ii) that it relates to taxation or revenue or is one of a purely fiscal character.*

ARTICLE 3

(1) FOR THE PURPOSE OF THIS TREATY THE TERRITORY OF A CONTRACTING

PARTY SHALL INCLUDE ALL TERRITORY UNDER THE JURISDICTION OF THAT CONTRACTING PARTY, INCLUDING AIR SPACE AND TERRITORIAL WATERS AND VESSELS AND AIRCRAFT REGISTERED IN THAT CONTRACTING PARTY OR AIRCRAFT LEASED WITHOUT CREW TO A LESSEE WHO HAS HIS PRINCIPAL PLACE OF BUSINESS, OR, IF THE LESSEE HAS NO SUCH PLACE OF BUSINESS, HIS PERMANENT RESIDENCE IN, THAT CONTRACTING PARTY IF ANY SUCH AIRCRAFT IS IN FLIGHT, OR IF ANY SUCH VESSEL IS ON THE HIGH SEAS WHEN THE OFFENSE IS COMMITTED.  FOR THE PURPOSES OF THIS TREATY AN AIRCRAFT SHALL BE CONSIDERED IN FLIGHT FROM THE MOMENT WHEN POWER IS APPLIED FOR THE PURPOSE OF THE TAKE-OFF UNTIL THE MOMENT WHEN THE LANDING RUN ENDS.

*When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive, or other appropriate authority of the requested State shall grant extradition if laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances.  If the laws in the requested State do not so provide, the executive authority in the requested State may, in its discretion, grant extradition.*

ARTICLE 4

(1) EXTRADITION SHALL NOT BE GRANTED IN ANY OF THE FOLLOWING CIRCUMSTANCES:

(I) WHEN THE PERSON WHOSE SURRENDER IS SOUGHT IS BEING PROCEEDED AGAINST, OR HAS BEEN TRIED AND DISCHARGED OR PUNISHED IN THE TERRITORY OF THE REQUESTED STATE FOR THE OFFENSE FOR WHICH HIS EXTRADITION IS REQUESTED.

(II) WHEN THE PROSECUTION FOR THE OFFENSE HAS BECOME BARRED BY LAPSE OF TIME ACCORDING TO THE LAWS OF THE REQUESTING STATE.

(III) WHEN THE OFFENSE IN RESPECT OF WHICH EXTRADITION IS REQUESTED IS OF A POLITICAL CHARACTER, OR THE PERSON WHOSE EXTRADITION IS REQUESTED PROVES THAT THE EXTRADITION REQUEST HAS BEEN MADE FOR THE PURPOSE OF TRYING OR PUNISHING HIM FOR AN OFFENSE OF THE ABOVE-MENTIONED CHARACTER.  IF ANY QUESTION ARISES AS TO WHETHER A CASE COMES WITHIN THE PROVISIONS OF THIS SUBPARAGRAPH, THE AUTHORITIES OF THE GOVERNMENT ON WHICH THE REQUISITION IS MADE SHALL DECIDE.

*(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:*
*(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;*

*(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;*

*(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;*

*(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and*

*(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses.*

## ARTICLE 5

IF A REQUEST FOR EXTRADITION IS MADE UNDER THIS TREATY FOR A PERSON WHO AT THE TIME OF SUCH REQUEST, OR AT THE TIME OF THE COMMISSION OF THE OFFENSE FOR WHICH EXTRADITION IS SOUGHT, IS UNDER THE AGE OF EIGHTEEN YEARS AND IS CONSIDERED BY THE REQUESTED STATE TO BE ONE OF ITS RESIDENTS, THE REQUESTED STATE, UPON A DETERMINATION THAT EXTRADITION WOULD DISRUPT THE SOCIAL READJUSTMENT AND REHABILITATION OF THAT PERSON, MAY RECOMMEND TO THE REQUESTING STATE THAT THE REQUEST FOR EXTRADITION BE WITHDRAWN, SPECIFYING THE REASONS THEREFOR.

## ARTICLE 6

WHEN THE OFFENSE FOR WHICH EXTRADITION IS REQUESTED IS PUNISHABLE BY DEATH UNDER THE LAWS OF THE REQUESTING STATE AND THE LAWS OF THE REQUESTED STATE DO NOT PERMIT SUCH PUNISHMENT FOR THAT OFFENSE, EXTRADITION MAY BE REFUSED UNLESS THE REQUESTING STATE PROVIDES SUCH ASSURANCES AS THE REQUESTED STATE CONSIDERS SUFFICIENT THAT THE DEATH PENALTY SHALL NOT BE IMPOSED, OR, IF IMPOSED, SHALL NOT BE EXECUTED.

## ARTICLE 7

*When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed.*

## Article 7 bis

**1.      The requested State, after granting an extradition request made in accordance with the Extradition Treaty, may temporarily surrender a person who has been convicted and sentenced in the requested State, in order that the person sought may be prosecuted in the requesting State. The temporary**

surrender of the person shall not divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus application relating to the conviction or sentence that otherwise may be available under the laws of the requested State.

2.     A person temporarily surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State.  The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose.  The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3.     The  period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4.     When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender.  A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5.     Subject to paragraph 7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requested State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition

6.     Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the request State, or at an earlier time specified by the requested State.

7.     Final surrender shall not take place when:

    (a)     the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

    (b)     after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State.

ARTICLE 8

THE DETERMINATION THAT EXTRADITION SHOULD OR SHOULD NOT BE GRANTED SHALL BE MADE IN ACCORDANCE WITH THE LAW OF THE REQUESTED STATE AND THE PERSON WHOSE EXTRADITION IS SOUGHT SHALL HAVE THE RIGHT TO USE ALL REMEDIES AND RECOURSES PROVIDED BY SUCH LAW.

## ARTICLE 9

(1) THE REQUEST FOR EXTRADITION SHALL BE MADE THROUGH THE DIPLOMATIC CHANNEL.

(2) THE REQUEST SHALL BE ACCOMPANIED BY A DESCRIPTION OF THE PERSON SOUGHT, A STATEMENT OF THE FACTS OF THE CASE, THE TEXT OF THE LAWS OF THE REQUESTING STATE DESCRIBING THE OFFENSE AND PRESCRIBING THE PUNISHMENT FOR THE OFFENSE, AND A STATEMENT OF THE LAW RELATING TO THE LIMITATION OF THE LEGAL PROCEEDINGS.

(3) WHEN THE REQUEST RELATES TO A PERSON WHO HAS NOT YET BEEN CONVICTED, IT MUST ALSO BE ACCOMPANIED BY A WARRANT OF ARREST ISSUED BY A JUDGE OR OTHER JUDICIAL OFFICER OF THE REQUESTING STATE AND BY SUCH EVIDENCE AS, ACCORDING TO THE LAWS OF THE REQUESTED STATE, WOULD JUSTIFY HIS ARREST AND COMMITTAL FOR TRIAL IF THE OFFENSE HAD BEEN COMMITTED THERE, INCLUDING EVIDENCE PROVING THE PERSON REQUESTED IS THE PERSON TO WHOM THE WARRANT OF ARREST REFERS.

(4) WHEN THE REQUEST RELATES TO A PERSON ALREADY CONVICTED, IT MUST BE ACCOMPANIED BY THE JUDGMENT OF CONVICTION AND SENTENCE PASSED AGAINST HIM IN THE TERRITORY OF THE REQUESTING STATE, BY A STATEMENT SHOWING HOW MUCH OF THE SENTENCE HAS NOT BEEN SERVED, AND BY EVIDENCE PROVING THAT THE PERSON REQUESTED IS THE PERSON TO WHOM THE SENTENCE REFERS.

## ARTICLE 10

(1) EXTRADITION SHALL BE GRANTED ONLY IF THE EVIDENCE BE FOUND SUFFICIENT, ACCORDING TO THE LAWS OF THE PLACE WHERE THE PERSON SOUGHT SHALL BE FOUND, EITHER TO JUSTIFY HIS COMMITTAL FOR TRIAL IF THE OFFENSE OF WHICH HE IS ACCUSED HAD BEEN COMMITTED IN ITS TERRITORY OR TO PROVE THAT HE IS THE IDENTICAL PERSON CONVICTED BY THE COURTS OF THE REQUESTING STATE.

*(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:*

*(a)   in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular s officer of the United States in Canada;*

*(b)      in the case of a request emanating from the United States for a person who is sought for prosecution, they are certified by a judicial authority or prosecutor who attests that the evidence is available for trial is sufficient to justify prosecution under the law of the prosecuting jurisdiction.  In the case of a request emanating from the United States for a person who is sought in connection with a conviction, the documents must be certified by a judicial , prosecuting or correctional authority who attests to the fact that the documents are accurate; or*

*(c)      they are certified or authenticated in any other manner accepted by the law of the*

*of the requested State.*

## ARTICLE 11

(1) IN CASE OF URGENCY A CONTRACTING PARTY MAY APPLY FOR THE PROVISIONAL ARREST OF THE PERSON SOUGHT PENDING THE PRESENTATION OF THE REQUEST FOR EXTRADITION THROUGH THE DIPLOMATIC CHANNEL. SUCH APPLICATION SHALL CONTAIN A DESCRIPTION OF THE PERSON SOUGHT, AN INDICATION OF INTENTION TO REQUEST THE EXTRADITION OF THE PERSON SOUGHT AND A STATEMENT OF THE EXISTENCE OF A WARRANT OF ARREST OR A JUDGMENT OF CONVICTION AGAINST THAT PERSON, AND SUCH FURTHER INFORMATION, IF ANY, AS WOULD BE NECESSARY TO JUSTIFY THE ISSUE OF A WARRANT OF ARREST HAD THE OFFENSE BEEN COMMITTED, OR THE PERSON SOUGHT BEEN CONVICTED, IN THE TERRITORY OF THE REQUESTED STATE.

(2) ON RECEIPT OF SUCH AN APPLICATION THE REQUESTED STATE SHALL TAKE THE NECESSARY STEPS TO SECURE THE ARREST OF THE PERSON CLAIMED.

*(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received.*

## ARTICLE 12

(1) A PERSON EXTRADITED UNDER THE PRESENT TREATY SHALL NOT BE DETAINED, TRIED OR PUNISHED IN THE TERRITORY OF THE REQUESTING STATE FOR AN OFFENSE OTHER THAN THAT FOR WHICH EXTRADITION HAS BEEN GRANTED NOR BE EXTRADITED BY THAT STATE TO A THIRD STATE UNLESS:

(I) HE HAS LEFT THE TERRITORY OF THE REQUESTING STATE AFTER HIS EXTRADITION AND HAS VOLUNTARILY RETURNED TO IT;

(II) HE HAS NOT LEFT THE TERRITORY OF THE REQUESTING STATE WITHIN THIRTY DAYS AFTER BEING FREE TO DO SO;  OR

(III) THE REQUESTED STATE HAS CONSENTED TO HIS DETENTION, TRIAL, PUNISHMENT FOR AN OFFENSE OTHER THAN THAT FOR WHICH EXTRADITION WAS GRANTED OR TO HIS EXTRADITION TO A THIRD STATE, PROVIDED SUCH OTHER OFFENSE IS COVERED BY ARTICLE 2.

(2) THE FOREGOING SHALL NOT APPLY TO OFFENSES COMMITTED AFTER THE EXTRADITION.

ARTICLE 13

(1) A REQUESTED STATE UPON RECEIVING TWO OR MORE REQUESTS FOR THE EXTRADITION OF THE SAME PERSON EITHER FOR THE SAME OFFENSE, OR FOR DIFFERENT OFFENSES, SHALL DETERMINE TO WHICH OF THE REQUESTING STATES IT WILL EXTRADITE THE PERSON SOUGHT.

(2) AMONG THE MATTERS WHICH THE REQUESTED STATE MAY TAKE INTO CONSIDERATION ARE THE POSSIBILITY OF A LATER EXTRADITION BETWEEN THE REQUESTING STATES, THE SERIOUSNESS OF EACH OFFENSE, THE PLACE WHERE THE OFFENSE WAS COMMITTED, THE DATES UPON WHICH THE REQUESTS WERE RECEIVED AND THE PROVISIONS OF ANY EXTRADITION AGREEMENTS BETWEEN THE REQUESTED STATE AND THE OTHER REQUESTING STATE OR STATES.

ARTICLE 14

(1) THE REQUESTED STATE SHALL PROMPTLY COMMUNICATE TO THE REQUESTING STATE THROUGH THE DIPLOMATIC CHANNEL THE DECISION ON THE REQUEST FOR EXTRADITION.

(2) IF A WARRANT OR ORDER FOR THE EXTRADITION OF A PERSON SOUGHT HAS BEEN ISSUED BY THE COMPETENT AUTHORITY AND HE IS NOT REMOVED FROM THE TERRITORY OF THE REQUESTED STATE WITHIN SUCH TIME AS MAY BE PRESCRIBED BY THE LAWS OF THAT STATE, HE MAY BE SET AT LIBERTY AND THE REQUESTED STATE MAY SUBSEQUENTLY REFUSE TO EXTRADITE THAT PERSON FOR THE SAME OFFENSE.

ARTICLE 15

(1) TO THE EXTENT PERMITTED UNDER THE LAW OF THE REQUESTED STATE AND SUBJECT TO THE RIGHTS OF THIRD PARTIES, WHICH SHALL BE DULY RESPECTED, ALL ARTICLES ACQUIRED AS A RESULT OF THE OFFENSE OR WHICH MAY BE REQUIRED AS EVIDENCE SHALL, IF FOUND, BE SURRENDERED TO THE REQUESTING STATE IF EXTRADITION IS GRANTED.

(2) SUBJECT TO THE QUALIFICATIONS OF PARAGRAPH (1) OF THIS ARTICLE, THE ABOVE-MENTIONED ARTICLES SHALL BE RETURNED TO THE REQUESTING STATE EVEN IF THE EXTRADITION, HAVING BEEN AGREED TO, CANNOT BE

CARRIED OUT OWING TO THE DEATH OR ESCAPE OF THE PERSON SOUGHT.

## ARTICLE 16

(1) THE RIGHT TO TRANSPORT THROUGH THE TERRITORY OF ONE OF THE CONTRACTING PARTIES A PERSON SURRENDERED TO THE OTHER CONTRACTING PARTY BY A THIRD STATE SHALL BE GRANTED ON REQUEST MADE THROUGH THE DIPLOMATIC CHANNEL, PROVIDED THAT CONDITIONS ARE PRESENT WHICH WOULD WARRANT EXTRADITION OF SUCH PERSON BY THE STATE OF TRANSIT AND REASONS OF PUBLIC ORDER ARE NOT OPPOSED TO THE TRANSIT.

(2) THE PARTY TO WHICH THE PERSON HAS BEEN EXTRADITED SHALL REIMBURSE THE PARTY THROUGH WHOSE TERRITORY SUCH PERSON IS TRANSPORTED FOR ANY EXPENSES INCURRED BY THE LATTER IN CONNECTION WITH SUCH TRANSPORTATION.

## ARTICLE 17

(1) EXPENSES RELATED TO THE TRANSPORTATION OF THE PERSON SOUGHT TO THE REQUESTING STATE SHALL BE PAID BY THE REQUESTING STATE.  THE APPROPRIATE LEGAL OFFICERS OF THE STATE IN WHICH THE EXTRADITION PROCEEDINGS TAKE PLACE SHALL, BY ALL LEGAL MEANS WITHIN THEIR POWER, ASSIST THE REQUESTING STATE BEFORE THE RESPECTIVE JUDGES AND MAGISTRATES.

(2) NO PECUNIARY CLAIM, ARISING OUT OF THE ARREST, DETENTION, EXAMINATION AND SURRENDER OF PERSONS SOUGHT UNDER THE TERMS OF THIS TREATY, SHALL BE MADE BY THE REQUESTED STATE AGAINST THE REQUESTING STATE.

## ARTICLE 17 bis

If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution.  In making its decision, the requested State shall consider all relevant factors, including but not limited to:

(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

(ii) the respective interests of the Contracting Parties;

(iii) the nationality of the victim or the intended victim;  and

(iv) the availability and location of the evidence.

## ARTICLE 18

(1) THIS TREATY SHALL BE RATIFIED AND THE INSTRUMENTS OF RATIFICATION SHALL BE EXCHANGED AT OTTAWA AS SOON AS POSSIBLE.

(2) THIS TREATY SHALL TERMINATE AND REPLACE ANY EXTRADITION AGREEMENTS AND PROVISIONS ON EXTRADITION IN ANY OTHER AGREEMENT IN FORCE BETWEEN THE UNITED STATES AND CANADA; EXCEPT THAT THE CRIMES LISTED IN SUCH AGREEMENTS AND COMMITTED PRIOR TO ENTRY INTO FORCE OF THIS TREATY SHALL BE SUBJECT TO EXTRADITION PURSUANT TO THE PROVISIONS OF SUCH AGREEMENTS.

(3) THIS TREATY SHALL ENTER INTO FORCE UPON THE EXCHANGE OF RATIFICATION. /1/ IT MAY BE TERMINATED BY EITHER CONTRACTING PARTY GIVING NOTICE OF TERMINATION TO THE OTHER CONTRACTING PARTY AT ANY TIME AND THE TERMINATION SHALL BE EFFECTIVE SIX MONTHS AFTER THE DATE OF RECEIPT OF SUCH NOTICE.

IN WITNESS WHEREOF THE UNDERSIGNED, BEING DULY AUTHORIZED THERETO BY THEIR RESPECTIVE GOVERNMENTS, HAVE SIGNED THIS TREATY.

DONE IN DUPLICATE, IN THE ENGLISH AND FRENCH LANGUAGES, EACH LANGUAGE VERSION BEING EQUALLY AUTHENTIC, AT WASHINGTON THIS THIRD DAY OF DECEMBER, ONE THOUSAND NINE HUNDRED SEVENTY ONE.

FOR THE UNITED STATES OF AMERICA:
(S) /2/
FOR CANADA:
(S) /3/

First Protocol Addendums

## ARTICLE VIII

*Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.*

## ARTICLE IX

*(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.*

*(2) The Protocol shall enter into force upon the exchange of instruments of ratification.*

Second Protocol Addendum

*Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.*

CAPS = ORIGINAL TREATY
*italic = amendments by First Protocol*
**bold italic = amendments by Second Protocol**